OPINION
{¶ 1} Defendant-appellant, Shawn Abbott, appeals from his conviction and sentence in the Warren County Common Pleas Court for aggravated vehicular homicide and aggravated vehicular assault.
 {¶ 2} On January 6, 2001, Ruth Corbett and her daughter, Susan, were driving south on U.S. Route 42. At the same time, Abbott was driving north on that same road in his pick-up truck. Terry Fannin, a tow-truck driver, was approaching U.S. Route 42 from Columbia Road, when he observed Abbott's pick-up traveling on the northbound lane of U.S. Route 42 at a high rate of speed. Fannin saw Abbott's pick-up truck go off the edge of the road, strike the guardrail, hit a Mercury Zephyr, and then collide head-on with Ruth Corbett's vehicle, killing her, and seriously injuring Susan.
 {¶ 3} Ohio State Highway Patrol Trooper Chris Crisafi was one of the law enforcement officers who reported to the scene of the accident. Crisafi went to Miami Valley Hospital, where Abbott had been transported, to obtain a statement and blood sample from him. Phlebotomist Tracy Murray drew a blood sample from Abbott at 8:15 a.m.
 {¶ 4} Abbott's blood sample was subsequently determined to contain a blood-alcohol content of .083 percent. The state's expert, Harry Plotnik, using retrograde extrapolation, determined that Abbott's blood-alcohol content would have tested at approximately .14 percent at the time of the collision.
 {¶ 5} Abbott was indicted on two counts of aggravated vehicular homicide, pursuant to R.C. 2903.06(A)(1) and (2),[1] and one count of aggravated vehicular assault, pursuant to R.C. 2903.08(A)(1).[2] Abbott moved to suppress the results of the blood testing and other evidence gathered from him. After holding a hearing on the motion, the trial court denied it.
 {¶ 6} At Abbott's trial, Corbett, Fannin, Crisafi and Plotnik testified to the facts set forth above. The jury convicted Abbott on all three counts, and the trial court sentenced him to eight years on his conviction for aggravated vehicular homicide and four years on his conviction for aggravated vehicular assault. The trial court ordered Abbott to serve the sentences consecutively.
 {¶ 7} Abbott appeals from his conviction and sentence, raising the following assignments of error.
 Assignment of Error No. 1 {¶ 8} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OF APPELLANT'S BLOOD ALCOHOL CONTENT."
 {¶ 9} Abbot argues the trial court erred by denying his motion to suppress evidence of his blood alcohol content because there was insufficient evidence presented to demonstrate that he voluntarily consented to the blood test performed on him. Abbott asserts that the fact that he was not informed the blood was being taken for evidentiary purposes and the fact that the taking of his blood could have been interpreted by him as being medically necessary "indicates constructive deception" on the part of the police. Abbott contends that under these circumstances, his consent to having his blood drawn could not be considered voluntary. We find Abbott's argument unpersuasive.
 {¶ 10} When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. State v. Johnson, 137 Ohio App.3d 847, 850, 2000-Ohio-276. An appellate court may not reverse a trial court's ruling on a motion to suppress if it is supported by substantial and credible evidence. Id.
 {¶ 11} Withdrawing blood from a suspect to determine the suspect's blood-alcohol content constitutes a "search" within the meaning of the Fourth Amendment. Schmerber v. California (1966), 384 U.S. 757, 767,86 S.Ct. 1826, 1834. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.'" Ohio v.Robinette (1996), 519 U.S. 33, 40 117 S.Ct. 417, 421, quoting Schnecklothv. Bustamonte (1973), 412 U.S. 218, 248-249, 93 S.Ct. 2041, 2059. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sinequa non of an effective consent." Robinette at 39, 117 S.Ct. at 421, quoting Schneckloth at 227, 93 S.Ct. at 2048.
 {¶ 12} The testimony presented at the suppression hearing showed that Trooper Crisafi asked the nurses at the hospital for a blood sample from Abbott. The nurses arranged to have Phlebotomist Murray draw the blood. When Murray told Abbott that Crisafi had asked for a blood sample, Abbott consented to having his blood drawn.
 {¶ 13} Murray testified that while she does not specifically recall drawing blood from Abbott, she does not, as a practice, draw blood without a patient's consent for reasons of personal safety. Although Abbott's sister, Julie Sperry, testified that Abbott refused Crisafi's request for a blood draw, the trial court was free to believe Crisafi's version of events rather than Sperry's. See State v. Antill (1964)176 Ohio St.2d 61, 67 (trier of fact may believe all, part, or none of a witness' testimony).
 {¶ 14} Abbott's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 15} "THE TRIAL COURT ERRED IN IMPOSING MAXIMUM AND CONSECUTIVE SENTENCES."
 {¶ 16} Abbott presents two issues under this assignment of error. First, he contends that the trial court erred by imposing the maximum sentence upon him for his aggravated vehicular homicide conviction because the sentence is unsupported by the record and the trial court failed to make sufficient findings with regard to its imposing the maximum sentence.
 {¶ 17} Aggravated vehicular homicide is a felony of the second degree. R.C. 2903.06(B)(1)(a). The sentencing range for a second-degree felony is a prison term of two to eight years. R.C. 2929.14(A)(2). As this court stated in State v. Garcia (1998), 126 Ohio App.3d 485:
 {¶ 18} "If the sentencing court elects to impose a prison term upon the offender and if the offender has not previously served a prison term, the court is required to impose the shortest authorized term of imprisonment pursuant to R.C. 2929.14(A), `unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.' (Emphasis added.) R.C. 2929.14(B). The sentencing court may impose the maximum authorized prison term for the offense `only upon offenders who committed the worst forms of the offense' or `pose the greatest likelihood of committing future crimes * * *.' R.C. 2929.14(C). Furthermore, if the sentencing court imposes the maximum authorized prison term for one offense, it must `make a finding' and `give its reasons' for selecting the maximum sentence. R.C. 2929.19(B)(2)(d)." Garcia at 486-487.
 {¶ 19} Here, the trial court expressly found on the record that Abbott's acts constituted the worst form of the offense of aggravated vehicular homicide, thereby complying with R.C. 2929.14(C). The trial court also stated its reasons for imposing the maximum sentence against Abbott, citing his four prior convictions for driving under the influence, and comparing Abbott to a "loaded gun" that "went off" this time, killing one person and seriously injuring another. There is ample support in the record for these determinations.
 {¶ 20} Furthermore, the trial court found that "the infliction of harm in this case was so great that a single term would not adequately reflect the seriousness of [Abbott's] conduct." While the trial court made this finding in relation to its imposing consecutive sentences upon Abbott, we believe it was also sufficient to support the trial court's decision not to impose the shortest sentence upon Abbott, pursuant to R.C. 2929.14(B)(2). No purpose would be served by requiring the trial court to make the same finding twice on the record.
 {¶ 21} Secondly, Abbott argues that the trial court erred by imposing consecutive sentences on him. We disagree with this argument.
 {¶ 22} To impose consecutive terms of imprisonment, the sentencing court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C.2929.14.(E)(4). The sentencing court must also find at least one of the circumstances listed in R.C. 2929.14(E)(4)(a)-(c), which include that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(E)(4)(b).
 {¶ 23} The trial court found that Abbott's actions caused harm so great that a single prison term would not adequately reflect the seriousness of his conduct. There is ample evidence in the record to support that determination. Abbott's actions resulted in the death of one person and serious injury to another. Additionally, as the trial court noted at the sentencing hearing, Abbott has at least four prior convictions for driving under the influence, one of which was as recent as 1998. And the trial court did not make this finding only in relation to its imposing the maximum sentence on Abbott for aggravated vehicular homicide, as Abbott contends.
 {¶ 24} Abbott's second assignment of error is overruled.
 Assignment of Error No. 3 {¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN PERMITTING THE STATE'S EXPERT WITNESS TO RENDER OPINIONS BEYOND THE SCOPE OF HIS EXPERTISE AND PERMITTING THE STATE TO CROSS-EXAMINE DEFENDANT'S EXPERT WITH RESPECT TO A HOSPITAL BLOOD TEST NOT IN EVIDENCE."
 {¶ 26} Abbott presents two issues under this assignment of error. First, Abbott asserts that the trial court abused its discretion by permitting the state's expert, Harry Plotnik, to render an opinion beyond the scope of his expertise in toxicology. We disagree with this argument.
 {¶ 27} Evid.R. 702 provides in relevant part that a witness may testify as an expert if, among other things, "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony[.]" Evid.R. 702(B) (emphasis added). Abbott acknowledges that Plotnik qualified as an expert in toxicology, but asserts that he testified to matters beyond the scope of toxicology. However, the only matter he specifies is "construction of the accident." But Plotnik's expert testimony cannot be fairly characterized as involving "accident reconstruction." Instead, Plotnik provided expert testimony on the effects of alcohol on Abbott's driving skills. This testimony was within the scope of his expertise.
 {¶ 28} Second, Abbott argues that the trial court erred by permitting the state to cross-examine his expert witness, Dr. Alfred Staubus, about a blood test taken prior to the one taken at Trooper Crisafi's request, which the parties had agreed prior to trial would not be admitted into evidence. Abbott argues this evidence was prejudicial "because it implied a prior test consistent with the State's blood test[.]" However, we are confident that any error committed by the trial court in allowing mention of the initial hospital blood test was harmless error, since there was substantial other evidence presented proving Abbott's guilt of the offenses with which he was charged. See State v.Davis (1975), 44 Ohio App.2d 335.
Abbott's third assignment of error is overruled.
Judgment affirmed.
YOUNG and BROGAN, JJ., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] {¶ a} R.C. 2903.06 states in relevant part:
 {¶ b} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
 {¶ c} "(1) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance
 {¶ d} "(2) Recklessly[.]"
[2] {¶ a} R.C. 2903.08 states in relevant part:
 {¶ b} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in either of the following ways:
 {¶ c} "(1) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]"